SEWELL SCOTT, RESPONDENT, v. CYNTHIA A. OTIS,
APPELLANT, IMPLEADED, ETC.

*Married woman—liability of, to an accommodation indorser of her note.*

Where a married woman procures one to indorse, for her accommodation, a note made by her with the avowed purpose of using the proceeds thereof for the benefit of her separate estate, or in a separate business, she is liable to such indorser for the amount he has been obliged to pay because of her failure to pay such note at maturity, independent of the fact as to whether its proceeds were used for the purposes designated.

APPEAL from a judgment in favor of the plaintiff, and from an order denying a motion for a new trial, made on the minutes of the court before which the action was tried.

There was a verdict at the Jefferson Circuit, for the plaintiff for the amount due upon two notes made by the defendant. One note was for $200, and the other for $600. The defense presented related solely to the note of $600.

The defendant was a married woman and made her note to the order of George Otis, her husband, and the same was indorsed by him and then indorsed by the plaintiff, and used to borrow $600 of one Davis. It was protested and the plaintiff was obliged to pay it, and he brings this action against the maker to recover what he was obliged to pay upon the note so indorsed. The defendant insisted at the trial that she was not liable. A motion for a new trial on the minutes was made and denied and judgment was entered, and the appeal is from the judgment and order.

*John Lansing,* for the appellant.

*O'Brien & Emerson,* for the respondent.

HARDIN, J.:

Cynthia A. Otis made a $600 note in 1875, and procured the indorsement of the plaintiff, a neighbor, thereon, and through S. B. Upham, as her agent, negotiated it for the loan of $600 in money

from one Abel Davis, who took the note and held it till it matured, and then took another note in renewal and finally the $600 note in suit was given, and after its maturity, and after the plaintiff was fixed thereon as an indorser, he took up the note and now seeks to recover of the defendant. These facts were shown upon the trial, and no dispute arose in respect thereto.

It also appeared that the defendant resided in Rutland with her husband, and that she owned a farm, and there was evidence given tending to establish that she is and was " carrying on a separate business ; " she has lived on the premises some fifteen years and her husband lives there with her.

Mr. Upham, the cashier, testified that the defendant called upon him in 1875, and wanted to procure a loan, and he says, "she claimed to own a farm and be carrying it on — a farm in Rutland Hollow."

She claimed to own the farm in her own right and to be carrying it on herself. " I sent to Abel Davis to see if he would loan·her $600, on a year's time with Sewell Scott's indorsement, and he concluded to take the note.    *    *    *    Mrs. Otis made the arrangement with me in person ; I think Mr. Davis left his check with me and I delivered it."        *        *        *        *

The court instructed the jury that in order to permit a recovery against a married woman upon a note, it must appear that it was either (first) given for the benefit of her separate estate, or (second) given in some business that she was carrying on.

The point here is, whether or not it was shown that the $600 note was given, either " for the benefit of her separate estate or some business that she was carrying on." This instruction was sufficiently favorable to the defendant. (*Smith* v. *Kennedy*, 13 Hun, 9.) It was held in *Mc Very* v. *Canhill* (70 N. Y., 295), that a married woman was liable upon her note given for borrowed money, for the avowed purpose of using the same for the benefit of her separate estate, though, in fact, it was not so applied.

The evidence before us would have justified a finding that such was her avowed object and purpose at the time she arranged for the loan of the money. Her representations at that time ought to estop her from maintaining a contrary position. (*Bodine* v. *Killeen*, 53 N. Y., 93.)

In *Cashman* v. *Henry* (75 N. Y., 103), ANDREWS, J., clearly points out the principle upon which a married woman's liability arises when she becomes the purchaser of real estate and assumes the payment of a mortgage resting thereon, although the purchase was not made for the purposes of trade or business.

It is difficult to see why she should not be liable for money loaned, as in the case before us, as well as for the payment of a mortgage which was assumed as a part of the purchase of the property so acquired by her.

In either case she receives and her estate derives the benefit, we must assume. In either case, in equity, she ought to pay, and that duty arises out of the exercise of her right to acquire property.

In *Broome* v. *Taylor* (76 N. Y., 564) it did not appear that the bond was given by the married woman *for money loaned* to her, and there is nothing in the opinion which conflicts with the views here expressed.

Again, the plaintiff being a surety for the defendant, the law presumes that she agreed, as a condition of her becoming such surety, to indemnify him against loss. He had no defense to the note, and paid it because he was legally liable to pay, and she, upon her implied indemnity, ought to save him against any loss by reason of becoming her surety. (*Vartie* v. *Underwood*, 18 Barb., 561.)

From the views already stated we derive the conclusion that the verdict, judgment and order are right and should be sustained.

TALCOTT, P. J., and SMITH, J., concurred.

Judgment and order affirmed.