## MAHONEY *a.* GUNTER.

*New York Common Pleas; General Term, May,* 1860.

JURISDICTION OF MARINE AND JUSTICES' COURTS.—WAIVER OF WANT OF JURISDICTION. — EVIDENCE. — DECREE OF SURROGATE.

Whether an action on the official bond of an executor or administrator is an action against the executor or administrator as such, within section 54 of the Code, excluding justices' courts from cognizance of such actions,—*Query?*

An order of another court cannot be proved by a copy of the record, even though signed by the judge and attested by his seal, unless it is proved or certified to be an examined copy. Per HILTON, J.

A complaint on the bond of an executor or administrator which does not show unconditionally that the surrogate had jurisdiction to issue letters on the decedent's estate, is insufficient. Per BRADY, J.

The surrogate has not power, on application made before final accounting, to direct payment of a debt out of the order of preference prescribed by the statute, unless proof is made that the debt is due. Per BRADY, J.

Appeal from a judgment of the New York Marine Court.

The facts are fully stated in the opinions.

HILTON, J.—Whether the Marine Court has jurisdiction of an action of this nature, must be determined by reference to sections 53 and 54 of the Code, which by section 65, are made applicable to that court.

The bond which formed the subject of the action, was made by the defendant Gunter, and her sureties the defendants Sherman and Savery, upon her appointment by the surrogate of the county of Queens, as administratrix of the goods, chattels, &c., of Harman H. Gunter, deceased, and was conditioned that she should faithfully execute the trust reposed in her as such administratrix, and obey all orders of the surrogate of said county, touching the administration of the estate so committed to her. The breach alleged, was that she neglected to pay to Feely and McLaughlin, the assignees of the plaintiff, the amount of a debt

ascertained and determined by such surrogate to be due from the estate of the intestate, and ordered by him to be paid therefrom by the defendant Gunter as such administratrix. It was clearly, therefore, an action against the administratrix and her sureties, upon a bond to recover damages sustained by reason of a breach of her official duty, in not obeying an order made by the surrogate, requiring her to pay out of the estate a debt ascertained by him to be due and owing to a creditor of the intestate ; and the bond having been assigned by a further order of the surrogate, for the purpose of being prosecuted, the extent of the recovery in the action brought upon it, would be the sum thus ordered to be paid.

By subdivisions 5 and 6 of section 53 referred to, the jurisdiction of the Marine Court is limited to actions upon bonds conditioned for the payment of money, and upon surety bonds taken in that court. And by subdivision 5 of section 54, it is expressly declared to have no jurisdiction of an action against an executor or administrator as such. So that whether we regard the bond here sued upon, as conditioned for the performance of an official duty, and not in terms for the payment of money ; or whether the nature of the liability of the defendant Gunter, which is sought to be enforced, is alone considered, the language of the Code is sufficiently comprehensive and explicit to cover this case in either aspect, and deprive the Marine Court of jurisdiction.

The case of O'Neil a. Martin (1 E. D. Smith, 404), is, I am aware, relied on as sustaining a contrary view. But there, it will be seen upon examination, this question was not presented for determination by the court; and although, in the opinions delivered, it was alluded to, yet it was evidently but an impression stated as obiter, and should not, therefore, be considered as controlling upon us.

In that case it appeared, that an action had been brought in a district court against the defendant, a specific judgment recovered, and a transcript filed with the county clerk; upon which execution having been issued and returned unsatisfied, proceedings supplementary were instituted before a judge of this court at chambers, and subsequently, on the defendant's application, dismissed, upon it appearing that the action was brought upon the usual administrator's bond, as in this case ; the judge hold-

ing that a justice's court had no jurisdiction of such an action. The general term, upon appeal, reversed this decision, on the ground that it was erroneous for the judge, in a proceeding supplementary to execution, to review the merits of the original action, and thus determine whether the court that gave the judgment, acquired or had jurisdiction of the matter in controversy; and added, that if the defendants objected to the validity of the judgment, they should have appealed; but by not doing so they submitted to it.

To this extent, the decision is not only to be followed, but meets our approval, indeed, it commends itself;—but obviously, after having determined that the judge at chambers could not go behind the transcript of the judgment, and look into the proceedings of the justice, to ascertain whether he had jurisdiction, the general term upon appeal was equally precluded.

It may be remarked, that here, the objection to the jurisdiction of the Marine Court was not presented until after the defendants had put in their answer, and the cause had been set down for trial; and as it was matter in abatement of the action, it is insisted that it was waived by pleading to the merits, and the parties should be considered as so intending. That the general effect of pleading in bar is to waive all matter in abatement of the action, cannot be disputed (Gosling *a.* Broach, 1 *Hilt. R.*, 49); but the waiver must be understood as only applying to such matters as it is competent for the party to waive or assent to. The jurisdiction, however, of a tribunal is not a thing of such a nature as can be conferred at the option of a party, where the law has unqualifiedly withheld it (Coffin *a.* Tracy 3 *Cai.*, 129; Beach *a.* Nixon, 5 *Seld.*, 35); and the Marine Court being strictly confined to the authority which these statutes have given it, can take nothing by implication, although parties to actions in it may by consent take away error in its proceedings and judgments. (Dudley *a.* Mayhew, 3 *Comst.*, 9; Striker *a.* Mott, 6 *Wend.*, 465.) And it seems if it should act without jurisdiction, though the judgment would be void, yet the party against whom it was given, if he would prevent its being carried into effect by execution against him, must seek his remedy by procuring a reversal upon appeal. (Cuyler *a.* Trustees of Rochester, 12 *Wend.*, 165; Starr *a.* Same, 6 *Ib.*, 564; Blin *a.* Campbell, 14 *Johns.*, 432.)

Being of opinion, for the reasons stated, that the judgment should be reversed, it is quite unnecessary to examine the other questions presented. But as a manifest error was committed at the trial, in admitting as evidence a paper purporting to be a copy of the order of the surrogate, directing the administratrix to pay the debt held by the plaintiff, without any proof whatever in respect to it, I will content myself with briefly alluding to the subject, with the remark that the paper referred to was a copy of an entry or record made in the Surrogate's Court in the course of a judicial proceeding, and might have been proven in three ways :

1. By the production of the original record.

2. By proving the paper produced to be an examined copy, or

3. By attaching to it the certificate of the surrogate, attested by his official seal, showing that the same had been compared by him with the original, and that it was a correct transcript therefrom, and of the whole thereof. (3 *Rev. Stat.*, 404, § 59, 4th ed., vol. ii., p. 649.) The plaintiff did neither, but merely produced a paper signed by the surrogate, and attested by his official seal, without any certificate being attached as the statute requires. The defendants objected to the admission of such a document in evidence; but the objection was overruled by the court, and they excepted.

This was clearly erroneous, and would be sufficient alone to call for a reversal of a judgment founded on such evidence.

BRADY, J.—Harman H. Gunter died intestate, in the county of Queens, in this State. Adeline C. Gunter applied to the surrogate of that county for letters of administration upon the goods, and chattels, and credits, which were of the said Harman; and on or about the 3d day of July, 1857, they were issued to her. The defendants Sherman and Savery, pursuant to the statute, united with her in the execution and delivery of a joint and several bond in the sum of $500, the condition of which was that if the said Adeline faithfully executed the trust reposed in her as administratrix of the said goods, and chattels, and credits of the said Harman, and obeyed all orders of the surrogate of the county of Queens, touching the administration of the said estate, then the obligation should be void; otherwise, to remain

in full force and virtue. After the expiration of six months from the granting of such letters of administration, the said Adeline was cited to appear, on the 8th day of March, at 11 A.M., before the said surrogate, to show cause why he should not decree payment against her of the debts or claims of Mary Feely, Margaret Mahoney, and Sarah McLaughlin, for services rendered to the intestate. On the day named in the citation, no one appearing to oppose, it was ordered and decreed by the surrogate that the said Adeline pay to the said Mary Feely, $111.20; to the said Margaret Mahoney, $89.42; and to the said Sarah McLaughlin, $82; and subsequently, on the 14th of August, 1858, the said surrogate, on the application of the said claimants, the said order or decree not having been obeyed, ordered that the bond given, as before stated, be assigned to them for the purpose of being prosecuted. On the 17th of August, 1858, Sarah McLaughlin and Mary Feely assigned their respective claims to the plaintiff, and in October, 1858, the plaintiff commenced this action to recover the sums which the said surrogate ordered Adeline to pay by the decree of the 8th of March. The facts thus stated were alleged in the complaint, and the defendants Sherman and Savery, answered by denying all the allegations of the complaint, except that the intestate died in the county of Queens, and the execution of the bond by them, and averred:

1. That Adeline had not neglected to pay the sums of money mentioned in the complaint, or either of them, or failed to execute the trust reposed in her, or to obey any legal order of the surrogate touching the estate committed to her.

2. That she had not filed an inventory, and that eighteen months had not elapsed since the granting of letters of administration to her.

3. That no assets ever came to her possession, and

4. That divers judgments against the intestate existed, which were liens against any estate he might have left, and which were entitled to a preference over the pretended claims of the plaintiff.

No objection was taken that the plaintiff had prosecuted the action in her own name, either by answer or demurrer, or upon the trial, and the defendants offered no evidence on their part. They now object to the judgment, however, on the ground that

the action should have been brought in the name of The People of the State of New York ; but the objection is too late, even if valid. (*Code*, §§ 144, 148; The People *ex rel.* Demarest *a.* Laws, 3 *Abbotts' Pr. R.*, 450; Baggott *a.* Boulger, 2 *Duer*, 160.)

When the cause was brought on, and before any testimony was given, it was insisted by the defendants that the Marine Court had no jurisdiction over the subject-matter of the action, and that the complaint did not contain facts sufficient to constitute a cause of action. As to the first of these objections, we have held that an action against the obligors of a bond, such as the one prosecuted herein, is an action against the administrator personally, and not against him as administrator within the provisions of section 54 of the Code. (O'Neil *a.* Martin, 1 *E. D. Smith*, 404.) And if the action can be prosecuted in the Marine Court against the administratrix, there can be no doubt that it may be against her sureties. They are not favored by section 54, above referred to. The last objection stated was for this reason, not well taken. But if the objection to the jurisdiction had been good, it was waived by pleading to the merits. (Gosling *a.* Broach, 1 *Hilt. R.*, 49.)

The second objection was, however, well taken. The complaint alleges that Harman H. Gunter died intestate in the county of Queens, and State of New York, or at the time of his death had personal property in said county, and that letters of administration were granted to the defendant Adeline. The power of the surrogate is limited. He shall have sole and exclusive power within the county for which he may be appointed, to grant letters of administration of the goods, chattels, and credits of persons dying intestate, where the intestate at or immediately previous to his death *was an inhabitant* of the county of such surrogate, in whatever place such death may have happened; and where an intestate not being an inhabitant of this State shall die in the county of such surrogate, leaving assets therein; and in other cases not necessary to be stated for the purposes of this appeal. The pleader seems to have had these powers in his mind when the complaint was drawn, and seems also to have intended to state that under each, the surrogate had authority to grant letters of administration. He did not, however, state a proper subject within either. He has not alleged that the intestate was an inhabitant of the county of Queens, at or imme-

Mahoney *a.* Gunter.

diately previous to his decease, or that not not being an inhabitant of this State, he died in that county leaving assets therein. Although the intestate died in the county of Queens as alleged, the surrogate would have no power to issue letters of administration of his goods, unless he were an inhabitant of, or not being a resident of the State, left assets in that county; and it cannot be disputed that the facts set out did not show the authority of the surrogate to grant the letters issued. That was necessary. The Surrogate's Court is a creature of the statute; and being a court of inferior and limited jurisdiction, those claiming under its decree must show affirmatively that the surrogate had authority to make the decree, and that the facts upon which he acted gave him jurisdiction. (Dakin *a.* Hudson, 6 *Cow.*, 221; Bloom *et al. a.* Burdick, 1 *Hill*, 130, 134; Cornell *a.* Barnes, 7 *Hill*, 35, *note e;* The People *a.* Kœber, *Ib.*, 40; Sharp *et al. a.* Spier, 4 *Hill*, 76; Corwin *a.* Merritt, 3 *Barb.*, 341; Bugbee *a.* Surrogate of Yates, 2 *Cow.*, 471.)

The facts did not, therefore, constitute a cause of action, because it did not appear from those facts that the surrogate had jurisdiction over the goods, chattels, and credits which were of Harman H. Gunter, deceased. It is no answer to this view, that the defendant Gunter having applied for letters, the defendants, her sureties, are estopped from questioning the power of the surrogate, inasmuch as consent could not confer jurisdiction, and without jurisdiction the bond taken by him would be void. (Dole, administrator *a.* Irish, 2 *Barb.*, 639.) There is still another fatal objection to the judgment rendered in the court below. The plaintiff, to maintain the issues on her part, gave in evidence a copy of decree of the surrogate, ordering the payment of the claims of the plaintiff, and those assigned to her. On examination of that decree, it will be seen that it was entered upon filing proof of the service of the citation to appear before the surrogate and show cause, and without any proof of any other fact. It does not appear that the claims for services rendered the intestate were proved, or that having been proved, there was proof of assets sufficient to justify the payment of those claims prior to the time allowed for a final accounting. It is true that the statute empowers the surrogate to decree the payments of debts after the expiration of six months from the time of granting letters of administration (2 *Rev. Stat.* 116, § 18,

4th ed., 300; Fitzpatrick *a.* Brady, 6 *Hill*, 581);—and that this power is discretionary, see Campbell *a.* Bruen (1 *Bradf. R.*, 229), although the propriety of exercise is questioned (*Willard on Ex.*, 302, 303);—but it was not intended by the Legislature that the surrogate upon the mere service of a citation to appear, should decree the payment of the claim urged.    The statute had provided that certain debts should have a preference over simple demands, and should be paid in the order of their classes, viz. :

1. Debts entitled to a preference under the laws of the United States.

2. Taxes assessed upon the estate of the deceased previous to his death.

3. Judgments docketed, and decrees enrolled against the deceased, according the priority thereof respectively.

4. All recognizances, bonds, sealed instruments, notes, bills, and unliquidated demands and accounts (2 *Rev. Stat.*, 87, § 27; 4th ed., 273, § 31);—and further, that in an action against an executor or administrator, he could set up as a defence that there were unpaid debts of a prior class unsatisfied. (2 *Rev. Stat.*, 88, § 31; 4th ed., 273, § 35.)   If the surrogate is not required by law to ascertain whether the assets are sufficient to justify him in decreeing a payment of a debt in the fourth class, there can be no doubt that when his decree directs the payment of a debt out of its order, or prior to the final distribution, it must at least appear that the debt is due.   There is no evidence in this case that any such proof was given to him, nor is there proof in the case that the claims directed to be paid were ever in fact due from the intestate.   The proof does not, therefore, show, in the language of the cases *supra*, affirmatively that the surrogate had authority to make the decree upon which this action is based, and that the facts upon which he acted gave him jurisdiction.

The judgment should be reversed.

DALY, F. J.—I concur in reversing this judgment, without expressing any opinion upon the point upon which Judges Brady and Hilton have differed.

Judgment reversed.